Gustavo Ponce, Esq.
Nevada Bar No. 15084
Mona Amini, Esq.
Nevada Bar No. 15381
**KAZEROUNI LAW GROUP, APC**
6940 S. Cimarron Rd., Suite 210
Las Vegas Nevada 89113
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
E-mail: gustavo@kazlg.com
E-mail: mona@kazlg.com

*Attorneys for Plaintiff*
*Kyleene Velez*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KYLEENE VELEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIG RIVER VENTURES LLC d/b/a HEALTHVAPE,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

//

//

//

//

//

//

//

//



KAZEROUNI LAW GROUP, APC

## INTRODUCTION

1. Plaintiff KYLEENE VELEZ ("Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit challenging the unlawful actions of BIG RIVER VENTURES LLC d/b/a HEALTHVAPE (referred to as "Defendant"). Defendant negligently, knowingly, and/or willfully placed unsolicited text messages to Plaintiff and the putative class on their respective cellular phones which are registered with the National Do-Not Call Registry ("DNC"), and internal Do Not Call registry, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), and related regulations, including but not limited to 47 C.F.R. § 64.1200(c). Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's unlawful conduct.

2. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by Plaintiff's attorneys.

3. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

4. Defendant sent numerous unsolicited text messages to Plaintiff's cellular telephone for the purpose of soliciting business from Plaintiff while Plaintiff's telephone number was registered with the DNC.

5. Defendant has violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) by bombarding consumers' mobile phones with non-emergency advertising and marketing text messages without prior express written consent.

6. In 1991, Congress passed the TCPA in response to complaints about certain telemarketing practices. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or

KAZEROUNI LAW GROUP, APC

place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.

7. The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

8. Although a caller may obtain prior express consent from a consumer, prior express consent may nevertheless be revoked.

9. The right to revocation is consistent with the common law principle that consent is revocable and honors the purpose of the TCPA.

10. Plaintiff alleges as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

11. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

12. Unless otherwise stated, Plaintiff alleges that any violations by Defendant was knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

13. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

**<u>JURISDICTION AND VENUE</u>**

14. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises out of violations of federal law. 47 U.S.C. § 227(c); and supplemental jurisdiction over all other claims that are related to claims in the action

pursuant to 28 U.S.C. § 1367.

15. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call-in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of CAFA diversity jurisdiction and CAFA jurisdiction are present.

16. Because Defendant conducts business within the State of Nevada, personal jurisdiction is established.

17. Venue is proper in the United States District Court for the District of Nevada pursuant to 18 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

(a) Defendant is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

(b) Defendant is located in this district;

(c) Plaintiff resided within this District during the relevant time;

(d) Defendant does substantial business within this district;

(e) Defendant is subject to personal jurisdiction in this judicial district because Defendant has availed itself of the laws and markets within this district; and,

(f) the harm to Plaintiff originated from within this judicial district.

## PARTIES

18. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of Nevada. Plaintiff is, and at all times mentioned herein was, a



KAZEROUNI LAW GROUP, APC

"person," as defined by 47 U.S.C. § 153(39).

19. Defendant is, and at all times mentioned herein was, acompany whose principal place of business and/or headquarters is located at 8635 W Sahara Ave, #3001, Las Vegas, NV 89117. Defendant is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39). At all times relevant herein, Defendant conducted business in the State of Nevada and within this judicial district.

20. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of Nevada and in the County of Clark, and within this judicial district.

21. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

**The Telephone Consumer Protection Act (TCPA)**

**47 U.S.C. §§ 227, et seq.**

22. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

23. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

24. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found,



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

25. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

26. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

27. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

28. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." Golan, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. §

64.1200(f)(12); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

29. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. Id.

30. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

31. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

32. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (*quoting Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

33. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq*., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

34. Since 2003, persons who register cell phone numbers on the National Do Not Call Registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the National Do Not Call Registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

35. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

36. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

## FACTUAL ALLEGATIONS

37. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

38. Defendant is a company that produces smoking vaporizers and pods

39. In Defendant's overzealous attempt to market its products, however, Defendant willfully or knowingly sent (and continues to send) (a) unsolicited and automated telemarketing text messages without the prior express written consent of the recipients and (b) unsolicited automated telemarketing text messages to persons who have registered their cellular telephone number on the DNC.

40. Through this conduct, Defendant has invaded the privacy of Plaintiff and the members of the Class.



KAZEROUNI LAW GROUP, APC

41. At all times relevant, Plaintiff was a citizen of the State of Nevada. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

42. Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39).

43. At all times relevant Defendant conducted business in the State of Nevada and in the County of Clark, within this judicial district.

44. At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number of ending in 7052 ("Cell Phone"). Plaintiff is the sole user and/or subscriber of her Cell Phone.

45. Plaintiff's Cell Phone was registered on the National Do Not Call Registry since on or about August 21, 2020.

46. Defendant has sent numerous text message solicitations to Plaintiff on her Cell Phone,[1] between approximately February 2026 and May 2026.

47. The first text message solicitation Plaintiff received from Defendant was on or about February 15, 2026, at approximately 10:30 A.M. The automated message read, "Overstock specials are live for insiders. Take a look before they're gone," and included an embedded link to Defendant's website. The message also stated, "Text STOP to opt-out." Plaintiff replied STOP and received another automated message confirming that she had successfully opted out.

48. Despite this, Plaintiff received another text message from Defendant on or about February 19, 2026, at approximately 10:30 A.M. This message read, "BOOST Berry Mint with Vitamin B12 is a top customer favorite. Have you tried it?" This message also included an embedded link to Defendant's website.

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.



KAZEROUNI LAW GROUP, APC

49. Then, on or about March 6, 2026, Plaintiff received another text message from Defendant at approximately 9:02 A.M. This message read, "Your routine shifts. Does your pen? Calm nights to focused mornings, there's a blend for every phase." This message also included an embedded link to Defendant's website. Plaintiff replied STOP to this message and received another confirmation message from Defendant.

50. However, Plaintiff received yet another text message from Defendant on or about March 15, 2026, at approximately 8:05 A.M. This message read, "It's your lucky day. Our St. Patrick's Day Sale is here! 20% OFF sitewide. Pens, pods, & every blend included. Use code LUCKY20." Plaintiff again replied STOP and received another message from Defendant confirming that she had unsubscribed.

51. Despite this, Plaintiff received another text message from Defendant on or about March 19, 2026, at approximately 8:05 A.M. This message read, "Don't push your luck. 20% OFF sitewide ends soon. Use code LUCKY20." Plaintiff replied STOP to this message and received a fourth message from Defendant confirming that she had successfully unsubscribed.

52. Despite this, Plaintiff received another text message from Defendant on or about March 27, 2026, at approximately 8:02 A.M. This message read, "HealthVape: Not too late to get lucky. Last chance for 20% OFF sitewide. Use LUCKY20 - https://kav3.io/qcuPbL Text STOP to opt-out." Plaintiff replied STOP to this message and received a fifth message from Defendant confirming that she had successfully unsubscribed.

53. However, Plaintiff received another text message from Defendant on or about April 5, 2026, at approximately 11:01 A.M. This message read, "What's your flavor? From citrus to peach to lavender, HealthVape has a vitamin-infused blend for every mood. Explore the full lineup:" and included a link to Defendant's website. Plaintiff replied STOP to this message and received a sixth confirmation text from Defendant confirming that she had successfully unsubscribed.



KAZEROUNI LAW GROUP, APC

54. Due to Defendant's continued failure to adhere to her opt-out requests, Plaintiff was forced to send Defendant a written demand letter on or about April 5, 2026. In the letter, Plaintiff reminded Defendant that she had already opted out of its text message solicitations on at least five (5) occasions and informed Defendant of its breaches and the damages associated with said breaches.

55. At the same time Plaintiff also sent Defendant an email which contained the same information as her written demand, including her phone number.

56. That same day, on or about April 5, 2026, Defendant responded to Plaintiff's email. In its response Defendant claimed that Plaintiff's phone number was not unsubscribed due to a "technical error" and asked her to provide her phone number to resolve the issue, despite it already being listed in Plaintiff's email.

57. On or about April 6, 2026, Plaintiff responded to Defendant by email where she told Defendant that she had already shared her number and that the "technical error" did not negate the violations which had occurred.

58. Then, on or about April 9, 2026, at approximately 11:59 A.M., Defendant received Plaintiff's written demand letter.

59. That same day, April 9, 2026, just before Plaintiff's demand letter was delivered, Plaintiff received another text message from Defendant at approximately 11:00 A.M. This message read, "Spring just got better! 20% off HealthVape blends – Use Code SPRING20" and included a link to Defendant's website.

60. On or about April 13, 2026, at approximately 10:15 A.M., Plaintiff received another text message from Defendant. This time the message read, "Don't miss 20% off all HealthVape blends! Use SPRING20" and again included a link to Defendant's website.

61. On or about April 17, 2026, at approximately 10:16 A.M., Plaintiff received another text message from Defendant. This message read, "Last chance! Grab 20% off all HealthVape blends with code SPRING20" and included a link to Defendant's website.



KAZEROUNI LAW GROUP, APC

62. Again, on or about April 19, 2026, at approximately 9:00 A.M., Plaintiff received another text message from Defendant which read, "Take it slow this Sunday. CHILL blends make relaxing and resetting easy. Explore chamomile flavors here:" and included a link to Defendant's website.

63. Once more, on or about May 3, 2026, at approximately 10:30 A.M., Plaintiff received another text message from Defendant which read, "HealthVape: Cinco de Mayo energy is here! BOOST Pens are your go-to for bold, flavor-forward vitamin energy through the day kav3.io/HBsib6 Text STOP to opt-out."

64. Again, on or about May 9, 2026, at approximately 7:30 A.M., Plaintiff received another text message from Defendant which read, "HealthVape: Mother's Day reminder-don't forget to text your mom. Our best-selling nicotine-free pens and blends are a simple alternative your mom would approve of https://kav3.io/uyt@br Text STOP to opt-out."

65. In total, Plaintiff received thirteen (13) text message solicitations from Defendant that are accounted for.

66. Twelve (12) of the messages were sent after February 15, which is when Plaintiff first opted out of Defendant's messages and received confirmation that she had successfully unsubscribed from further text message solicitations.

67. Six (6) of the messages were sent after April 5, which is when Defendant learned that Plaintiff's phone number was still receiving text message solicitations even after she had replied STOP on five occasions to unsubscribe.

68. Five (5) of the messages were sent after April 9, which is when Defendant received Plaintiff's written demand letter.

69. At no point did the Plaintiff provide prior express consent for any of the text messages that Defendant sent Plaintiff.

70. Such text messages constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

71. Plaintiff's Cell Phone number was on the DNC since August 21, 2020.



KAZEROUNI LAW GROUP, APC

72. Plaintiff received numerous telephone solicitations from Defendant within a 12-month period prior to the filing of the Complaint, and more than 31 days after her Cell Phone registration on the DNC.

73. Plaintiff did not provide Defendant with her cellular telephone number at any point in time, nor did he give permission for Defendant to message her Cell Phone.

74. Plaintiff did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

75. Plaintiff did not have a personal relationship with Defendant at any point in time.

76. Plaintiff did not give Defendant prior express invitation or consent in writing for Defendant to message Plaintiff's cellular telephone for marketing or solicitation purposes.

77. Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

78. Companies are not permitted to make telemarketing calls – or accept business derived from telemarketing calls – unless they have implemented and adhere to a valid Do Not Call policy.

79. Furthermore, Defendant does not adhere to a valid internal Do Not Call Policy and does not take adequate steps to ensure that the entities making the calls adhere to an internal Do Not Call policy.

80. Despite Plaintiff's requests to Defendant to cease such text messages, Defendant persisted to bombard Plaintiff with unsolicited text messages.

81. Based on Plaintiff's own personal experience, either Defendant failed to institute policies as required by the TCPA, prior to the initiation of a call, or alternatively to the extent that Defendant had internal do-not-call policies, they do not adhere to the policies that exist.

82. The text message Defendant sent to Plaintiff consisted of a pre-written



KAZEROUNI LAW GROUP, APC

template of impersonal text and was identical to text messages Defendant sent to other consumers.

83. Upon information and belief, Defendant sent substantially similar, if not identical, unsolicited messages en masse to Plaintiff and thousands of other consumers who were also registered with the DNC for at least 31 days prior to these unsolicited text messages, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

84. Defendant sent numerous unsolicited text messages to Plaintiff to her Cell Phone which was registered with the DNC for at least 31 days prior to these unsolicited text messages, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

85. Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

86. Upon information and belief, Defendant did not make the telephone solicitations in error.

87. Each of the above unsolicited telephonic communications by Defendant and/or their agents violated 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

88. Upon information and belief, the text messages to Plaintiff and other consumer numbers, after requesting that Defendant stop contacting them, but either a result of an infirmity with the sufficiency, implementation or other aspect of Defendant's do-not-call policy or lack of a do-not-call policy at all.

89. Defendant's failure to record and honor both Plaintiff's requests evidences the failure to implement proper procedures prior to the initiation of the telephone calls at issue.

90. Even assuming Defendant did have the necessary policies in place prior



KAZEROUNI LAW GROUP, APC

to the initiation of the calls at issue, the repeated failures to adhere to that policy demonstrates that company policy was rendered ineffective by lack of compliance. *See Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 141 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017), citing In the Matter of Dynasty Mortg., L.L.C., 22 F.C.C. Rcd. 9453, 9466 (2007).

91. Receiving Defendant's unauthorized messages drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on her phone and battery.

92. Through this conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

93. Plaintiff was personally affected because Plaintiff was frustrated, distressed, disturbed, and felt harassed that Defendant and/or their agents continued to send unsolicited and unauthorized text messages to Plaintiff's cellular telephone.

94. Defendant's telephonic communications forced Plaintiff to be deprived of the privacy and utility of her cellular phone by forcing Plaintiff to ignore or reject Defendant's disruptive messages, dismiss alerts, and/or silence her cellular phone as a result of Defendant's incessant telephone solicitations.

95. The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendant sent the text messages to Plaintiff without her consent, Defendant failed to address or respect the limitations imposed by the TCPA. In doing so, Defendant invaded Plaintiff's privacy and violated the spirit and intent behind the TCPA.

96. Defendant's violations caused Plaintiff to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g., Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at



KAZEROUNI LAW GROUP, APC

*8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

97. Through the aforementioned conduct, Defendant each repeatedly violated the TCPA, 47 U.S.C. §§ 227, et seq., numerous times.

## STANDING

98. Plaintiff has standing under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) valid injuries in fact; (b) which are traceable to the conduct of Defendant; and (c) are likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### *Injury In Fact*

99. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

100. For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant sent a telephone solicitation to Plaintiff's cellular telephone. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and de facto.

101. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiff's privacy and peace by texting her cellular telephone, despite Plaintiff's registering her telephone number with the DNC. Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

time opening and reading the text message. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

***Traceable to Defendant's Conduct***

102. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

103. The above-mentioned text messages were directly and explicitly linked to Defendant. Defendant's text message specifically identified Defendant HealthVape as the sender and beneficiary of these text messages. These text messages are the sole source of Plaintiff's and the Class's injuries and directly traceable to Defendant. Therefore, Plaintiff has illustrated facts that show that her injuries are traceable to the conduct of Defendant.

***Redressability***

104. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

105. In the present case, Plaintiff's Request for Relief includes a request for injunctive relief and statutory damages for each text message sent by Defendant to cellular numbers on the internal DNC and national DNC, as authorized by statute in 47 U.S.C. § 227. The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiff and the members of the putative class.

106. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

107. Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself

KAZEROUNI LAW GROUP, APC

individually and on behalf of the Classes defined as follows:

108. Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Class (the "Class"), which is defined is follows:

> **National Do Not Call Class:**
> All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 31 days, (2) who received more than one telephone solicitation (3) made by or on behalf of Defendant, (4) for the purpose of promoting Defendant's goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.
>
> **Internal Do Not Call Class:**
> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number after making a request to Defendant to not receive future text messages.
>
> **Quiet Hours Class:**
> All persons in the United States, within the four years prior to the filing of this Complain, who received one or more calls within any 12-month period by or on behalf of Defendant or its agent to their telephone number either before 8:00 a.m. or after 9:00 p.m.

109. Excluded from the Class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

110. Plaintiff reserves the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

111. Further, Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members whose cellular telephone numbers were on the DNC, thereby causing annoyance to Plaintiff and the Class and also

KAZEROUNI LAW GROUP, APC

invading the privacy of Plaintiff and the Class. Plaintiff and the Class members were damaged thereby.

112. Numerosity: Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. The exact number of the members of the Class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted thousands of Class members nationwide during the Class Period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

113. Ascertainability: The members of the Class are ascertainable because the Class is defined by reference to objective criteria. In addition, the members of the Class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and/or by third parties.

114. Typicality: As a person who received numerous telephone solicitations from Defendant within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, and who did not provide Defendant prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

115. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has had to suffer the burden and invasion of privacy of receiving unsolicited text messages to her cellular telephone from Defendant while her number was registered on the National Do Not Call Registry. Thus, her injuries are typical to Class Members.

116. Plaintiff's claims, and the claims of the members of the Class, originate

from the same conduct, practice and procedure on the part of Defendant.

117. Plaintiff's claims are based on the same theories, as are the claims of the members of the Class.

118. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally texting their cellular phones without prior express consent while they were registered on the National Do Not Call Registry. Plaintiff and the Class were damaged thereby.

119. Adequacy: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the Class with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class. Plaintiff will vigorously pursue the claims of the members of the Class. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA. Plaintiff's counsel will assert, protect and otherwise represent the members of the Class. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

120. Predominance: The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.



KAZEROUNI LAW GROUP, APC

121. Commonality: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

a. What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

b. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent more than one text message to the members of the Class whose telephone numbers were on the DNC;

c. Whether, within the four made prior to the filing of this Complaint, Defendant or its agents sent more than one text message solicitation to Plaintiff and to the members of the Class who requested that Defendant stop sending such text messages to their telephone numbers;

d. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent text messages to Plaintiff and to the members of the Class before 8:00 a.m. or after 9:00 p.m.

e. Whether Defendant obtained prior express written consent to send text messages solicitation to Plaintiff or the Class members' telephones;

f. Whether Defendant's conduct violated the TCPA;

g. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

h. Whether Defendant should be enjoined from engaging in such conduct in the future.

122. Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.
- The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their



KAZEROUNI LAW GROUP, APC

ability to protect their interests.

- The pursuit of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.
- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.
- The damages suffered by each individual member of the Class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Class to redress the wrongs done to them.
- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.
- The pursuit of Plaintiff's claims, and the claims of the members of the Class, in one forum will achieve efficiency and promote judicial economy.
- There will be little difficulty in the management of this action as a class action.

123. Defendant has acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

124. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

the wrongs complained of herein.

125. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with applicable law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

126. Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

127. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Plaintiff and Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227, *ET SEQ.*

**(*On Behalf of Plaintiff and the National Do Not Call Class*)**

128. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

129. Defendant and/or its agents placed unsolicited text messages to Plaintiff and the other members of the Class.

130. Defendant made these text messages en masse without the consent of Plaintiff and the other members of the TCPA Class.

131. Defendant's conduct was negligent, willful or knowing.

132. Defendant knew or should have known that it did not have prior express written consent to send these text messages in violation of the TCPA.

133. Defendant negligently, willfully, and/or knowingly allowed unsolicited text messages to be sent to Plaintiff and Class members. For instance, Defendant

could have determined from a review of its own business records that it did not have the required prior express written consent to contact Plaintiff and/or Class members, yet disregarded such information and sent the illegal and unwanted solicitation text messages to Plaintiff and the Class.

134. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

135. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, et seq., Plaintiff and each member of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5). Under 47 C.F.R. § 64.1200(c), "[n]o person or entity shall initiate any telephone solicitation to . . . (2) [a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."

136. Under 47 C.F.R. § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(c) are applicable to any person or entity making telephone solicitations or telemarketing calls to wires telephone numbers.

> "(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

C.F.R. § 64.1200(e).

KAZEROUNI LAW GROUP, APC

137. Plaintiff and Class members registered their telephone numbers with the DNC so as to not receive calls from entities like Defendant.

138. Plaintiff and members of the Class received more than one marketing text message within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

139. At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

140. Defendant sent unsolicited and unauthorized text messages to the cellular telephones of Plaintiff and the Class members, cellular telephones which were registered with the National Do-Not Call Registry, for the purpose of marketing goods and/or services to Plaintiff and the Class.

141. Defendant knew that it did not have prior express written consent to send these text messages, and knew or should have known that it was sending text messages to cellular numbers on the National Do-Not Call Registry in violation of the TCPA.

142. Defendant willfully or knowingly allowed text messages to be sent to Plaintiff's and Class members' cellular telephone numbers on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff and/or Class members yet disregarded such information and placed illegal and unwanted solicitation text messages.

143. Defendant's text messages caused Plaintiff and members of the Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

144. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by

KAZEROUNI LAW GROUP, APC

or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(c).

145. Because Plaintiff and members received more than one text message in a 12- month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(c), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

146. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

147. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

148. Plaintiff and class members also suffered damages in the form of invasion of privacy.

149. Plaintiff and class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

150. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## COUNT II
## VIOLATIONS OF THE TCPA
## 47 U.S.C. §§ 227, *ET SEQ.*

**(*On Behalf of Plaintiff and the Internal Do Not Call Class*)**

151. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

152. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

153. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do- not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6)

154. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wires telephone numbers.

> "(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

47 C.F.R. § 64.1200(e)

155. Plaintiff and Class members made requests to Defendant not to receive calls from Defendant.

156. Defendant failed to honor Plaintiff and the Class members' requests not to receive calls from Defendant.



KAZEROUNI LAW GROUP, APC

157. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons, including but not limited to Plaintiff, who requested not to receive telemarketing calls made by Defendant or on their behalf, pursuant to 47 C.F.R. § 64.1200(d).

158. Because Plaintiff and the Class members received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

159. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and other similarly situated Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

160. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and other similarly situated Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

161. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE TCPA 47 U.S.C. §§ 227 et seq. and 47 CFR § 64.1200(c)(1)

***(On Behalf of Plaintiff and the Quiet Hours Class)***

162. Plaintiff repeats and realleges the paragraphs 1 through 69 of this Complaint and incorporates them by reference herein.

163. The TCPA delegates rulemaking to the FCC.

164. The FCC's regulations provide in relevant part that "no person or entity shall initiate any telephone solicitation to: Any residential telephone subscriber before the hours of 8 a.m. or after 9 p.m. (local time at the contacted party's location). 47



KAZEROUNI LAW GROUP, APC

C.F.R. § 64.1200(c)(1).

165. Defendant sent telemarketing text messages to Plaintiff that were received before 8:00 a.m. or after 9:00 p.m. despite Plaintiff residing in Nevada, at all relevant times, and despite Plaintiff being physically present in Nevada at all relevant times, and Defendant knowing that.

166. Because Plaintiff and class members received one or more telemarketing text messages sent by or on behalf of Defendant outside the permissible hours, specifically, before 8:00 A.M. or after 9 P.M. local time of the Plaintiff, Defendant violated 47 C.F.R. § 64.1200(c)(1), thereby violating 47 U.S.C. § 227(c)(5).

167. The text messages before 8:00 a.m. or after 9:00 p.m. sent to Plaintiff and the Quiet Hours Class were thus in violation of 47 C.F.R. § 64.1200(c)(1).

168. As a result of the above violations of the TCPA, Plaintiff and class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

169. As a As a result of the above violations of the TCPA, Plaintiff and class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

170. Plaintiff and class members also suffered damages in the form of invasion of privacy.

171. Plaintiff and class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel.
- Injunctive relief prohibiting Defendant from engaging in such conduct in



KAZEROUNI LAW GROUP, APC

the future pursuant to 47 U.S.C. § 227(c);

- Statutory damages of $500.00 for Plaintiff and each member the Class for each and every one of Defendant's violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(c);
- Statutory damages of $1,500.00 for Plaintiff and each member the Class for each and every one of Defendant's willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(c);
- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

**DEMAND FOR JURY TRIAL**

172. Plaintiff is entitled to, and demand, a trial by jury on all issues so triable.

Dated: June 3, 2026

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ Gustavo Ponce*

GUSTAVO PONCE, ESQ.
MONA AMINI, ESQ.
6940 S. CIMARRON RD., SUITE 210
LAS VEGAS NEVADA 89113
*Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC